IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KENT WUESTLING,** | : | Civil Action No. 3:12-CV-660 |
| **Plaintiff,** | : | (Judge Conner) |
| v. | : | |
| **LACKAWANNA COUNTY, COREY O'BRIEN, and JIM WANSACZ,** | : | |
| **Defendants** | : | |

**MEMORANDUM**

Presently before the court is a motion to dismiss (Doc. 13) filed by defendants Lackawanna County, Corey O'Brien, and Jim Wansacz (collectively, "defendants"). For the reasons that follow, the court will deny the motion.

I. **Background**[1]

This case arises out of the termination of plaintiff Kent Wuestling ("Wuestling") from Lackawanna County's ("the County") Parks and Recreation

---

[1] In accordance with the standard of review for a motion to dismiss pursuant to Rule 12(b)(6), the court will present the facts as alleged in the complaint. See *infra* Part II. However, those portions of the complaint which consist of no more than legal conclusions or a formulaic recitation of the elements of a cause of action have been disregarded. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Santiago v. Warminster Twp., 629 F.3d 121, 128 (3d Cir. 2010).

Department in February 2012.[2] According to the complaint, Wuestling secured his position in 2007 because Wuestling provided former County Commissioner Michael Washo ("Washo") with politically advantageous information which aided his administration. (Doc. 1 ¶ 32, 34). Wuestling's position was primarily administrative in nature and did not involve political or policy making duties. (Id. ¶ 33).

Washo and defendant Corey O'Brien ("O'Brien") served as Lackawanna County's Democratic Majority Commissioners from January 2008 until January 2012. (Id. ¶ 21). Washo did not seek re-election. (Id. ¶ 36). In the November 2011 election, O'Brien was re-elected and defendant Jim Wansacz ("Wansacz") replaced Washo. (Id. ¶ 22). Wuestling did not assist O'Brien or Wansacz in the May 2011 primary or the November 2011 election and purportedly offered them *de minimus* financial support. (Id. ¶¶ 35, 38).

O'Brien and Wansacz were sworn into office in January 2012. (Doc. 1 ¶ 23). Shortly thereafter, O'Brien and Wansacz required non-union County employees to re-apply for their positions in the new administration. (Id. ¶ 25). On February 5, 2012, Wansacz stated to the Times-Tribune that he and O'Brien were looking for

---

[2] The court notes that similar lawsuits have been filed in the Middle District against Lackawanna County for terminations which occurred shortly after other County Commissioner elections. See, *e.g.*, Wrightson v. Lackawanna County, No. 3:04-CV-0038; Bell, *et al.* v. Lackawanna County, *et al.*, 3:08-CV-1926; Kovaleski, *et al.* v. Lackawanna County, *et al.*, 3:08-CV-737; Kalinoski v. Lackawanna County, *et al.*, 3:10-CV-314; Arnone v. Lackawanna County, *et al.*, 3:10-CV-301; Nolan v. Lackawanna County, *et al.*, 3:09-CV-2567. (Doc. 1, ¶¶ 9-20).

the "best people" to hire as liaisons with local governments.³ (Id. ¶ 28, Doc. 1-1, Ex. A). Wansacz admitted that the new liaisons may have "contacts and connections" to his and O'Brien's recent political campaigns. (Id.) In February 2012, O'Brien and Wansacz terminated Wuestling's employment. (Id. ¶ 37). Wuestling's replacement was Andy Kudzinowski, who contributed money to Wansacz's and/or O'Brien's election campaign. (Id. ¶¶ 39, 40).

Wuestling filed a two count employment discrimination complaint against defendants on April 10, 2012. (Doc. 1). Count I alleges violations of 42 U.S.C. § 1983; specifically, a municipal liability claim against the County and a political patronage discrimination claim against O'Brien and Wansacz. (Id. ¶¶ 47-51). Wuestling alleges that defendants violated his First Amendment right to free association. (Id. ¶ 49). Count II contains a pendent state law claim for wrongful termination in violation of public policy. (Id. ¶¶ 52-55).

Defendants filed the instant motion to dismiss on June 11, 2012, pursuant to Federal Rule of Civil Procedure 12(b)(6). In response, Wuestling withdrew his wrongful termination claim but otherwise opposed the motion. (Doc. 16, at 14). The motion is fully briefed and ripe for disposition.

---

³ At this early procedural stage, it is unclear whether these local government liaison positions include policy-making responsibilities. See Galli v. New Jersey Meadowlands Comm'n, 490 F.3d 265, 270 (3d Cir. 2007) (noting that political patronage discrimination claims do not apply to positions that require political affiliation).

## II. Legal Standard

When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine, whether under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir. 2009) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)); see also Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)). The plaintiff must plead sufficient factual content to allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A complaint must assert sufficient facts "to raise a reasonable expectation that discovery will reveal evidence" of the elements necessary for relief. Bell Atlantic Corp v. Twombly, 550 U.S. 544, 556 (2007); see also Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008). In addition to reviewing the facts contained in the complaint, the court may also consider exhibits attached to the complaint and matters of public record. Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192 (3d Cir. 1993).

## III. Discussion

Defendants assert that Plaintiff's First Amendment right to freedom of association was not violated because Wuestling associated with O'Brien and Wansacz during the 2011 County Commissioners campaign by signing O'Brien's

4

nominating petition[4] and contributing "marginal financial support" to the two candidates. (Doc. 15, at 8). Defendants derivatively assert that Wuestling's municipal liability claim must fail because the political discrimination claim against O'Brien and Wansacz is meritless. (Id. at 9-10). Finally, defendants contend that Wuestling is not entitled to punitive damages because there is "no evidence" that O'Brien and Wansacz's conduct was driven by "evil motive or intent" or that they acted in reckless disregard of Wuestling's First Amendment rights. (Id. at 11). The court shall address each contention in turn.

### 1. 42 U.S.C. § 1983 Claim

42 U.S.C. § 1983 offers private citizens a means to redress violations of federal law committed by state officials. Section 1983 is not itself a source of substantive rights but instead provides a method for vindicating rights secured through the Constitution or federal statutes. Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002). One such constitutionally protected right is the First Amendment right to freedom of association. Roberts v. United States Jaycees, 468 U.S. 609, 617-18 (1984). Citizens have the freedom to associate for the purpose of engaging in free speech, assembly, petition for the redress of grievances, and the exercise of religion. Id. at

---

[4] Wuestling does not object to the defendant's use of this document, which is presented to the court outside of the pleadings. For the purposes of this motion, the court assumes that the nominating petition is a matter of public record. (See Doc. 14-1, Ex. A). See also Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) ("To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record.").

5

618. Citizens also have the freedom to decline such associations with others. Id. at 623; see also Bennis v. Gable, 823 F.2d 723, 731 (3d Cir. 1987) ("A citizen's right not to support a candidate is every bit as protected as his right to support one.").

The First Amendment right to free association prohibits public employers from compelling an employee to relinquish or to adopt certain political associations in order to secure and retain employment, unless the position includes a policy-making function necessitating political fidelity to public officeholders. See Elrod v. Burns, 427 U.S. 347 (1976); Branti v. Finkel, 445 U.S. 507 (1980). To establish a political patronage discrimination claim, a public employee must allege that he or she experienced an adverse employment decision because of his or her opposition to, or lack of association with, the political party or candidate in power. The plurality in Elrod explained that the practice of "placing loyal supporters in government jobs that may or may not have been made available by political discharges" results in a restriction of an employee's right to free association and also impedes in the "free functioning of the electoral process." 427 U.S. at 352-56. The Elrod plurality reasoned that patronage practice improperly compels a public employee to support a political party or candidate under the threat of dismissal for failure to provide the expected support. Id. at 360.

To adequately state a political patronage discrimination claim, Wuestling's complaint must allege that (1) he was employed at a public agency in a position that does not require political affiliation; (2) he engaged in constitutionally protected conduct; and (3) such conduct was a substantial or motivating factor in the

6

government's employment decision. Galli v. N.J. Meadowlands Comm'n, 490 F.3d 265, 271 (3d Cir. 2007). The third prong implicitly requires sufficient factual assertions which raise an expectation that discovery will reveal evidence of defendants' knowledge of the protected conduct as well as causation. Id. at 275.

Defendants assert that Wuestling's complaint does not sufficiently plead the second and third prongs: that he engaged in constitutionally protected conduct, *i.e.*, non-association, and that such conduct was a substantial or motivating factor in O'Brien and Wansacz's decision to terminate him. Defendants' entire argument rests on its factual allegation that Wuestling actually associated with O'Brien and Wansacz during the 2011 County Commissioners campaign by signing O'Brien's nominating petition and contributing "marginal financial support" to the two candidates. (Doc. 15, at 8; Doc. 14-1, Ex. A; Doc. 1 ¶ 38).

In Bennis v. Gable, 823 F.2d 723 (3d Cir. 1987), the Third Circuit explained that Elrod and Branti also protect plaintiffs who were not demoted due to their political opposition but instead were demoted to "make room" for the political supporters of the favored candidate or party. 823 F.2d at 731. The court reasoned that "an alternative view of a demotion to make positions available for political supporters is that the demotion thus reflects a failure to support." Id. See also Conjour v. Whitehall Twp., 850 F. Supp. 309, at 317 (E.D. Pa. 1994) ("The Third Circuit has explicitly rejected the argument that Elrod and Branti should not be extended to demotions or terminations carried out to make room for political supporters . . . ."). In Galli v. N.J. Meadowlands Comm'n, 490 F.3d 265 (3d Cir.

7

2007), the Third Circuit held that the First Amendment also protects an employee's complete lack of political activity, reasoning that an adverse employment action taken simply to create positions for political supporters may also constitute political patronage discrimination. 490 F.3d at 273.

Thus, allegations that the government replaced an employee with a political supporter implicitly reflects the employee's failure to support the political party or candidate in power. Wuestling alleges that Wansacz and O'Brien terminated him: (1) in order to "make room" for potential political patronage positions, and (2) because Wuestling was not politically useful to them. (Doc. 1 ¶¶ 24, 38, 43). Wuestling also alleges that O'Brien and Wansacz replaced him with Andy Kudzinowski, who contributed money to Wansacz's and O'Brien's election campaign. (Doc. 1 ¶¶ 39, 40). Therefore, Wuestling successfully asserts that he engaged in constitutionally protected conduct by failing to support O'Brien and Wansacz, that O'Brien and Wansacz knew of his lack of political support, and that he was terminated and replaced with a political supporter.

The court must make the determination of whether merely signing a nomination petition and providing "marginal" or *de minimus* financial support constitutes "political support" in the context of all of the facts. Defendants are free to explore this issue in discovery and to reassert these arguments in the form of a Rule 56 motion. Pertinent facts will include the precise amount of financial support or in-kind contribution which Wuestling provided to O'Brien and Wansacz as well as any other factors that may have influenced O'Brien and Wansacz's termination

8

decision. At this procedural juncture, the court finds that Wuestling's complaint pleads sufficient factual content, namely that O'Brien and Wansacz "made room" for political supporters and that Wuestling's comparative lack of political support was a substantial or motivating factor in his termination. The court will deny defendants' motion to dismiss Wuestling's political patronage discrimination claim. Concomitantly, Defendants' derivative argument contra Wuestling's municipal liability claim against the County also fails, and Wuestling's § 1983 claim survives in its entirety.

### 2. Punitive Damages

O'Brien and Wansacz also contest Wuestling's claim for punitive damages under § 1983. Punitive damages are available against individual defendants in a § 1983 claim when there is evidence that the defendants' conduct was "motivated by evil motive or intent" or when the defendants acted with "reckless or callous indifference" to a person's federally protected rights. Smith v. Wade, 461 U.S. 30, 56 (1983).

Defendants argue that there is "no evidence" that O'Brien and Wansacz's conduct was motivated by evil motive or intent or that they acted with reckless disregard of Wuestling's First Amendment rights because Wuestling initially supported the candidacies of O'Brien and Wansacz. (Doc. 15, at 11). As Wuestling correctly notes, defendants conflate the motion to dismiss and summary judgment standards: there is no "evidence" of O'Brien and Wansacz's intent at the motion to dismiss stage. (Doc. 16, at 12). At this juncture, the court merely endeavors to

ascertain "whether under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir. 2009) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)).

Wuestling's complaint pleads sufficient factual content to support his claim for punitive damages based upon defendants' alleged § 1983 violation. Wuestling alleges that Wansacz and O'Brien terminated him to "make room" for potential political patronage positions, and that Wuestling was no longer politically useful to them. (Doc. 1 ¶¶ 24, 38, 43). Wuestling's complaint also describes a number of pre-existing lawsuits filed against Lackawanna County and O'Brien personally. (Id. ¶¶ 9-20). Thus, the court may reasonably infer that defendants had sufficient knowledge of the law prohibiting adverse employment decisions due to an employee's political association or non-association. See Alexander v. Riga, 208 F.3d 419, 431 (2000) (holding that malice and reckless indifference in the context of punitive damages may refer to the defendant's knowledge that he is acting in violation of federal law).

## IV. Conclusion

For the foregoing reasons, the court will deny defendants' motion (Doc. 13) to dismiss. An appropriate order follows.

        S/ Christopher C. Conner
        CHRISTOPHER C. CONNER
        United States District Judge

Dated:     March 1, 2013

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KENT WUESTLING,** | : | **Civil Action No. 3:12-CV-660** |
| **Plaintiff,** | : | **(Judge Conner)** |
| v. | : | |
| **LACKAWANNA COUNTY, COREY O'BRIEN**, and **JIM WANSACZ,** | : | |
| **Defendants** | : | |

## **ORDER**

AND NOW, this 1st day of March, 2013, upon consideration of defendants' motion (Doc. 13) to dismiss, and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

1. Defendants' motion (Doc. 13) to dismiss is DENIED.

2. Plaintiff's state law claim for wrongful termination is DEEMED withdrawn.

    S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge